UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

CASE NO:    15-cv-5032

-----------------------------------------------------------------------X

NORGUARD INSURANCE COMPANY,
a Pennsylvania insurance company,

                Plaintiff,

      v.

MANUEL ESTUARDO LOPEZ, an undocumented
person, and NATURAL IMAGES LANDSCAPING, INC.,
a New York corporation,

                Defendants.

-----------------------------------------------------------------------X

**COMPLAINT**
**JURY TRIAL**
**REQUESTED**

Plaintiff, NORGUARD INSURANCE COMPANY (hereinafter "NORGUARD"), by and through its attorneys, RUSSO & TONER, LLP, as and for a Complaint against the defendants, MANUEL ESTUARDO LOPEZ (hereinafter "LOPEZ"), and NATURAL IMAGES LANDSCAPING, INC. (hereinafter "NATURAL IMAGES"), respectfully alleges as follows upon information and belief:

## NATURE OF THE CLAIMS

1.    NORGUARD seeks a judicial declaration pursuant to 28 U.S.C. §§ 2201, *et seq.* that it is not obligated to defend or indemnify NATURAL IMAGES for any legal fees, litigation expenses, awards, judgments or settlements in a claim for worker's compensation benefits made by LOPEZ against NATURAL IMAGES arising out of an accident that allegedly occurred on May 7, 2015 at 3015 Peconic Lane, Peconic, New York involving LOPEZ because NATURAL IMAGES knowingly made material misrepresentations on an application of insurance submitted to NORGUARD with the intent to mislead and induce NORGUARD to issue a worker's

compensation and employer's liability policy of insurance to NATURAL IMAGES.  In reliance on the false material representations by NATURAL IMAGES, NORGUARD was induced to issue policies of worker's compensation and employer's liability insurance to NATURAL IMAGES, policy number NAWC528955, with effective dates from June 12, 2013 to June 12, 2014, and June 12, 2014 to June 12, 2015 (hereinafter collectively "the NorGuard Policy"). NORGUARD would not have issued the NorGuard Policy to NATURAL IMAGES if NORGUARD had known that the material representations made by NATURAL IMAGES in connection with the application for insurance were false.

2.      NORGUARD respectfully seeks a judicial declaration pursuant to 28 U.S.C. §§ 2201, *et seq.* that it is not obligated to pay medical expenses, indemnity payments and/or worker's compensation benefits to LOPEZ  arising out of an accident that allegedly occurred on May 7, 2015 at 3015 Peconic Lane, Peconic, New York because NATURAL IMAGES and LOPEZ entered into a common scheme to avoid Federal and State laws, and in furtherance of the common scheme, NATURAL IMAGES knowingly made material misrepresentations on an application of insurance submitted to NORGUARD. In reliance on the false material representations by NATURAL IMAGES, NORGUARD was induced to issue the NorGuard Policy.  NORGUARD would not have issued the NorGuard Policy to NATURAL IMAGES if NORGUARD had known that the material representations made by NATURAL IMAGES in connection with the application for insurance were false.

3.      NORGUARD also respectfully seeks a judicial declaration pursuant to 28 U.S.C. §§ 2201, *et seq.* that a worker's compensation and employer's liability policy of insurance issued by NORGUARD to NATURAL IMAGES, policy number NAWC528955, with effective dates from June 12, 2013 to June 12, 2014, is rescinded and cancelled *ab initio* as a matter of law

because NATURAL IMAGES knowingly made material misrepresentations on an application of insurance submitted to NORGUARD.   In reliance on the false material representations by NATURAL IMAGES, NORGUARD was induced to issue the workers' compensation and employer's liability policy to NATURAL IMAGES, policy number NAWC528955, with effective dates from June 12, 2013 to June 12, 2014.  NORGUARD would not have issued this policy if NORGUARD had known that the material representations made by NATURAL IMAGES in connection with the application for insurance were false.

4.     NORGUARD also respectfully seeks a judicial declaration pursuant to 28 U.S.C. §§ 2201, *et seq.* that a worker's compensation and employer's liability policy of insurance issued by NORGUARD to NATURAL IMAGES, policy number NAWC528955, with effective dates from June 12, 2014 to June 12, 2015, is rescinded and cancelled *ab initio* as a matter of law because NATURAL IMAGES knowingly made material misrepresentations on an application of insurance submitted to NORGUARD.   In reliance on the false material representations by NATURAL IMAGES, NORGUARD was induced to issue a worker's compensation and employer's liability policy to NATURAL IMAGES, policy number NAWC528955, with effective dates from June 12, 2014 to June 12, 2015.  NORGUARD would not have issued this policy if NORGUARD had known that the material representations made by NATURAL IMAGES in connection with the application for insurance were false.

5.     NORGUARD also respectfully submits that it is entitled to damages for fraud and civil conspiracy from NATURAL IMAGES and/or LOPEZ because NATURAL IMAGES and LOPEZ entered into a common scheme to avoid Federal and State laws, and in furtherance of the common scheme, NATURAL IMAGES knowingly made material misrepresentations on an application of insurance submitted to NORGUARD.   In reliance on the false material

representations by NATURAL IMAGES, NORGUARD was induced to issue the NorGuard Policy.  NORGUARD would not have issued the NorGuard Policy to NATURAL IMAGES if NORGUARD had known that the material representations made by NATURAL IMAGES in connection with the application for insurance were false.  As a result of the fraud and civil conspiracy by NATURAL IMAGES and/or LOPEZ, NORGUARD has sustained and will sustain damages in excess of $75,000.00.

6. As set forth herein, NORGUARD only asserts claims for civil and equitable relief on its own behalf and does not assert any claims that are within the purview of other parties or authorities.

## THE PARTIES

7. At all times hereinafter mentioned, NORGUARD is a corporation formed under and existing pursuant to the laws of the State of Pennsylvania.

8. At all times hereinafter mentioned, NORGUARD maintains a principal place of business in the State of Pennsylvania.

9. At all times hereinafter, NORGUARD is licensed to issue insurance policies in the State of New York.

10. At all times hereinafter mentioned, LOPEZ is an undocumented person.

11. At all times hereinafter mentioned, LOPEZ resides in the State of New York.

12. At all times hereinafter mentioned, LOPEZ is domiciled in the State of New York.

13. At all times hereinafter mentioned, NATURAL IMAGES is a corporation formed under and existing pursuant to the laws of the State of New York.

14.     At all times hereinafter mentioned, NATURAL IMAGES maintains a principal place of business in the State of New York.

## JURISDICTION AND VENUE

15.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, *et seq.* because the plaintiff NORGUARD is a citizen of the State of Pennsylvania, the defendant LOPEZ is an undocumented person who is domiciled in the State of New York, the defendant NATURAL IMAGES is a citizen of the State of New York, and the matter in controversy exceeds $75,000.00, exclusive of interest and costs.

16.     In addition, jurisdiction is also based on 28 U.S.C. § 2201, which enables any court of the United States, upon the filing of an appropriate pleading, to declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

17.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) because the defendants, LOPEZ and NATURAL IMAGES, reside within the Eastern District of New York.

## FACTS COMMON TO ALL CAUSES OF ACTION

### APPLICATION FOR INSURANCE

18.     On or about May 8, 2013, NATURAL IMAGES submitted an application for workers' compensation and employer's liability insurance to NORGUARD.

### FALSE REPRESENTATIONS BY NATURAL IMAGES

19.     Prior to, and on or about May 8, 2013 NATURAL IMAGES paid cash wages to some and/or all of its employees, including LOPEZ.

20.     After May 8, 2013, NATURAL IMAGES continued to pay cash wages to some and/or all of its employees, including LOPEZ.

21.     As part of an application for insurance, NORGUARD inquired as to whether NATURAL IMAGES paid cash wages to its employees.

22.     As part of an application for insurance, whether NATURAL IMAGES paid cash wages to some or all of its employees was material with regard to determining whether to issue the NorGuard Policy because if cash wages are paid to employees of NATURAL IMAGES, the risk of claims that are potentially covered by the NorGuard Policy could not be reliably determined, and NORGUARD would not have issued the NorGuard Policy.

23.     As part of an application for insurance, whether NATURAL IMAGES paid cash wages to some or all of its employees was material with regard to determining whether to issue the NorGuard Policy because if cash wages are paid to employees of NATURAL IMAGES, the risk of fraudulent claims made by individuals who are not employed by NATURAL IMAGES unreasonably increases, and NORGUARD would not have issued the NorGuard Policy.

24.     As part of an application for insurance, whether NATURAL IMAGES paid cash wages to some or all of its employees was material with regard to determining whether to issue the NorGuard Policy because if cash wages are paid to employees of NATURAL IMAGES, there is insufficient independent documentation to verify that claimants who submit claims on the NorGuard Policy are employed by NATURAL IMAGES, and the risk of claims that are potentially covered by the NorGuard Policy cannot be reliably determined, and NORGUARD would not have issued the NorGuard Policy.

25.     As part of an application for insurance, whether NATURAL IMAGES paid cash wages to some or all of its employees was material with regard to determining whether to issue the NorGuard Policy because if cash wages are paid to employees of NATURAL IMAGES, there is insufficient independent documentation to verify the amount of wages paid to claimants

on the NorGuard Policy, and the risk of claims that are potentially covered by the NorGuard Policy cannot be reliably determined, and NORGUARD would not have issued the NorGuard Policy.

26.     On or about May 8, 2013, NATURAL IMAGES knowingly and falsely represented to NORGUARD that it did not pay cash wages to any of its employees.

27.     On or about May 8, 2013, NATURAL IMAGES submitted an application for workers' compensation and employer's liability insurance to NORGUARD with a material misrepresentation that it did not pay cash wages to any of its employees.

28.     On or about May 8, 2013, NATURAL IMAGES, by and through its agent(s), knowingly and falsely represented to NORGUARD that it did not pay cash wages to any of its employees.

29.     On or about May 8, 2013, NATURAL IMAGES, by and through its authorized representative(s), falsely represented to NORGUARD that it did not pay cash wages to any of its employees.

30.     Prior to or on or about May 8, 2013, NATURAL IMAGES paid cash wages to some and/or all of its employees, including but not limited to day laborers.

31.     On or about May 8, 2013, NATURAL IMAGES falsely represented to NORGUARD that it did not pay cash wages, including but not limited to day laborers, to any of its employees.

32.     After May 8, 2013, NATURAL IMAGES continued to pay cash wages to some and/or all of its employees, including but not limited to day laborers.

33.     On or about May 8, 2013, NATURAL IMAGES submitted an application for workers' compensation and employer's liability insurance to NORGUARD that falsely

represented that it did not pay cash wages, including but not limited to day laborers, to any of its employees.

34. On or about May 8, 2013, NATURAL IMAGES, by and through its agent(s), falsely represented to NORGUARD that it did not pay cash wages, including but not limited to day laborers, to any of it employees.

35. On or about May 8, 2013, NATURAL IMAGES, by and through its authorized representative(s), falsely represented to NORGUARD that it did not pay cash wages, including but not limited to day laborers, to any of it employees.

36. Prior to and on or about May 8, 2013, NATURAL IMAGES performed work at elevation differentials of over 15 feet in height.

37. After May 8, 2013, NATURAL IMAGES continued to perform work at elevation differentials of over 15 feet in height.

38. As part of an application for insurance, NORGUARD inquired as to whether NATURAL IMAGES performed work at elevation differentials of over 15 feet in height.

39. As part of an application for insurance, whether NATURAL IMAGES performed work at elevation differentials of over 15 feet in height was material with regard to determining whether to issue the NorGuard Policy because if NATURAL IMAGES performed work at elevation differentials of over 15 feet in height, the risk of large losses would have been too great and NORGUARD would not have issued the NorGuard Policy.

40. On or about May 8, 2013, NATURAL IMAGES falsely represented to NORGUARD that NATURAL IMAGES did not perform work at elevation differentials of over 15 feet in height.

41.     On or about May 8, 2013, NATURAL IMAGES submitted an application for workers' compensation and employer's liability insurance to NORGUARD with a material misrepresentation that it did not perform work over at elevation differentials of over 15 feet in height.

42.     On or about May 8, 2013, NATURAL IMAGES, by and through its agent(s), falsely represented to NORGUARD that it did not perform work at elevation differentials of over 15 feet in height.

43.     On or about May 8, 2013, NATURAL IMAGES, by and through its authorized representative(s), falsely represented to NORGUARD that it did not perform work at elevation differentials of over 15 feet in height.

44.     Prior to May 8, 2013, NATUARL IMAGES performed tree trimming and pruning work that involved the use of ladders.

45.     After May 8, 2013, NATURAL IMAGES continued to perform tree trimming and pruning work that involved the use of ladders.

46.     As part of an application for insurance, NORGUARD inquired as to whether NATURAL IMAGES performed tree trimming and pruning work that involved the use of ladders.

47.     As part of an application for insurance, whether NATURAL IMAGES performed tree trimming and pruning work that involved the use of ladders was material with regard to determining whether to issue the NorGuard Policy because if NATURAL IMAGES performed tree trimming and pruning work that involved the use of ladders, the risk of large losses would have been too great and NORGUARD would not have issued the NorGuard Policy.

48.     On or about May 8, 2013, NATURAL IMAGES falsely represented to NORGUARD that NATURAL IMAGES that it did not perform tree trimming and pruning work that involved the use of ladders.

49.     On or about May 8, 2013, NATURAL IMAGES submitted an application for workers' compensation and employer's liability insurance to NORGUARD with a material misrepresentation that it did not perform tree trimming and pruning work that involved the use of ladders.

50.     On or about May 8, 2013, NATURAL IMAGES, by and through its agent(s), falsely represented to NORGUARD that it did not perform tree trimming and pruning work that involved the use of ladders.

51.     On or about May 8, 2013, NATURAL IMAGES, by and through its authorized representative(s), falsely represented to NORGUARD that it did not perform tree trimming and pruning work that involved the use of ladders.

## THE NORGUARD POLICY

52.     Based on the false material representations made by NATURAL IMAGES and/or its agents and/or its authorized representatives, NORGUARD was induced to issue policies of workers' compensation and employer's liability insurance to NATURAL IMAGES, policy number NAWC528955, with effective dates from June 12, 2013 to June 12, 2014, and effective dates from June 12, 2014 to June 12, 2015.

53.     NORGUARD relied upon the false material representations made by NATURAL IMAGES and/or its agents and/or its authorized representatives to issue the NorGuard Policy.

54.     NORGUARD would not have issued the NorGuard Policy to NATURAL IMAGES if NORGUARD had known that one or more of the material representations made by NATURAL IMAGES in connection with the application for insurance were false.

## LOPEZ AND NATURAL IMAGES AVOIDED
## FEDERAL AND STATE LAWS

55.     At all times hereinafter mentioned, upon information and belief, LOPEZ is an undocumented person.

56.     Upon information and belief, prior to May 7, 2015, LOPEZ attempted to enter the United States at a time and place other than as designated by immigration officers.

57.     Upon information and belief, prior to May 7, 2015, LOPEZ entered the United States at a time and place other than as designated by immigration officers.

58.     Upon information and belief, prior to May 7, 2015, LOPEZ eluded examination by immigration officers.

59.     Upon information and belief, prior to May 7, 2015, LOPEZ eluded inspection by immigration officers.

60.     Upon information and belief, prior to May 7, 2015, LOPEZ attempted to enter the United States by willfully false or misleading representation or the willful concealment of a material fact.

61.     Upon information and belief, prior to May 7, 2015, LOPEZ obtained entry to the United States by a willfully false or misleading representation or the willful concealment of a material fact.

62.     Upon information and belief, prior to May 7, 2015, LOPEZ violated 8 U.S.C. § 1325, entitled "Improper entry by alien."

63.    Upon information and belief, prior to May 7, 2015, LOPEZ was 14 years of age or older and had not been registered and fingerprinted within accordance with 8 U.S.C. § 1201(b).

64.    Upon information and belief, prior to May 7, 2015, LOPEZ remained in the United States for 30 days or longer and did not apply for registration or to be fingerprinted before the expiration of 30 days.

65.    Upon information and belief, prior to May 7, 2015, LOPEZ violated 8 U.S.C. § 1302, entitled "Registration of aliens."

66.    Upon information and belief, prior to May 7, 2015, LOPEZ arrived in the United States at a location other than a border crossing point designed by the Secretary, failed to immediately report the arrival, and failed to present himself and all articles accompanying him for inspection.

67.    Upon information and belief, prior to May 7, 2015, LOPEZ violated 19 U.S.C. § 1459, entitled "Reporting requirements for individuals."

68.    Upon information and belief, prior to May 7, 2015, LOPEZ conspired to commit violations of Federal immigration laws of the United States with another person or persons, and defraud the United States and its governmental agencies, including but not limited to the United States Department of Homeland Security, United States Immigration and Naturalization Service, United States Citizenship and Immigration Service, United States Immigration and Customs Enforcement, and Internal Revenue Service.

69.    Upon information and belief, prior to May 7, 2015, LOPEZ violated 18 U.S.C. § 371, entitled "Conspiracy to commit offense or to defraud United States."

70.     Upon information and belief, prior to May 7, 2015, LOPEZ falsely and willfully represented himself to be a citizen of the United States.

71.     Upon information and belief, prior to May 7, 2015, LOPEZ violated 18 U.S.C. § 911, entitled "False Personation – Citizen of the United States."

72.     Upon information and belief, prior to May 7, 2015, LOPEZ knowingly and willfully falsified, concealed, covered up by trick, scheme or device a material fact concerning his immigration status within the jurisdiction of the executive and legislative branches of the Government of the United States.

73.     Upon information and belief, prior to May 7, 2015, LOPEZ knowingly and willfully made a materially false, fictitious or fraudulent statement or representation concerning his immigration status within the jurisdiction of the executive and legislative branches of the Government of the United States.

74.     Upon information and belief, prior to May 7, 2015, LOPEZ knowingly and willfully made or used a false writing or document knowing the same contained a materially false, fictitious or fraudulent statement or entry concerning his immigration status within the jurisdiction of the executive and legislative branches of the Government of the United States.

75.     Upon information and belief, prior to May 7, 2015, LOPEZ violated 18 U.S.C. § 1001, entitled "Statements or entries generally."

76.     Upon information and belief, prior to May 7, 2015, LOPEZ falsely represented himself to be a citizen of the United States.

77.     Upon information and belief, prior to May 7, 2015, LOPEZ violated 8 U.S.C. § 1182(a)(6)(C)(ii), entitled "Falsely Claiming Citizenship."

78.     Upon information and belief, prior to May 7, 2015 LOPEZ violated 8 U.S.C. § 1227(a)(3)(D), entitled "Falsely Claiming Citizenship."

79.     Upon information and belief, prior to May 7, 2015 LOPEZ knowingly obtained, used, possessed accepted and/or received a forged, counterfeited, altered and/or false immigrant or nonimmigrant via, permit, border crossing car, alien registration receipt card or other document.

80.     Upon information and belief, prior to May 7, 2015, LOPEZ violated 18 U.S.C. § 1546, entitled "Fraud and misuse of visas, permits, and other documents."

81.     Upon information and belief, prior to May 7, 2015, LOPEZ knowingly forged, counterfeited, altered, or falsely made a document for the purpose of satisfying a requirement of or obtaining a benefit from the Immigration and Nationality Act.

82.     Upon information and belief, prior to May 7, 2015, LOPEZ violated 8 U.S.C. § 1324c, entitled "Penalties for document fraud."

83.     Upon information and belief, prior to May 7, 2015, LOPEZ knowingly made make or cause to be made any false statement or representation in connection with benefits under the Social Security Act.

84.     Upon information and belief, prior to May 7, 2015, LOPEZ violated 42 U.S.C. § 408, entitled "Penalties."

85.     Upon information and belief, prior to May 7, 2015, LOPEZ knowingly transferred, possessed, or used, without lawful authority, a means of identification of another person.

86.     Upon information and belief, prior to May 7, 2015, LOPEZ violated 18 U.S.C. § 1028A, entitled "Aggravated identity theft."

87.     Upon information and belief, prior to May 7, 2015, LOPEZ knowingly and willfully failed to pay Federal taxes or estimated Federal taxes.

88.     Upon information and belief, prior to May 7, 2015, LOPEZ violated IRC Sec. 7203 entitled "Willful failure to file return, supply information or pay tax."

89.     Upon information and belief, prior to May 7, 2015, LOPEZ failed to make, render, sign, certify, or file a tax return or report required by the Tax Law of the State of New York.

90.     Upon information and belief, prior to May 7, 2015, LOPEZ violated NY CLS § 1801, *et seq.*, entitled "Tax fraud acts."

91.     Upon information and belief, prior and including May 7, 2015, NATURAL IMAGES hired LOPEZ knowing that LOPEZ was an unauthorized alien, and continued to employ LOPEZ knowing that LOPEZ was and is an unauthorized alien with respect to such employment.

92.     Upon information and belief, prior to and including May 7, 2015, NATURAL IMAGES violated 8 U.S.C. § 1324a, entitled "Unlawful employment of aliens" with respect to LOPEZ.

93.     Upon information and belief, prior to and including May 7, 2015, NATURAL IMAGES and LOPEZ did avoid the laws of the United States of America, and the State of New York, including, but not limited to the laws described above.

94.     In furtherance of the collusion between NATURAL IMAGES and LOPEZ to avoid the laws of the United States of America, and the State of New York, on May 8, 2013, NATURAL IMAGES falsely represented to NORGUARD that NATURAL IMAGES did not pay cash wages, including but not limited to day laborers, to any of its employees.

95.     In furtherance of the collusion between NATURAL IMAGES and LOPEZ to avoid the laws of the United States of America, and the State of New York, on May 8, 2013, NATURAL IMAGES falsely represented to NORGUARD that NATURAL IMAGES did not perform work at elevation differentials of over 15 feet in height.

96.     In furtherance of the collusion between NATURAL IMAGES and LOPEZ to avoid the laws of the United States of America, and the State of New York, on May 8, 2013, NATURAL IMAGES falsely represented to NORGUARD that NATURAL IMAGES did not perform tree trimming and pruning work that involved the use of ladders.

97.     Prior to and including May 7, 2015, NATURAL IMAGES and LOPEZ conspired to avoid the laws of the United States of America, and the State of New York, including, but not limited to the laws described above.

98.     In furtherance of the conspiracy between NATURAL IMAGES and LOPEZ to avoid the laws of the United States of America, and the State of New York, on May 8, 2013, NATURAL IMAGES falsely represented to NORGUARD that NATURAL IMAGES did not pay cash wages, including but not limited to day laborers, to any of its employees.

99.     In furtherance of the conspiracy between NATURAL IMAGES and LOPEZ to avoid the laws of the United States of America, and the State of New York, on May 8, 2013, NATURAL IMAGES falsely represented to NORGUARD that NATURAL IMAGES did not perform work at elevation differentials of over 15 feet in height.

100.    In furtherance of the conspiracy between NATURAL IMAGES and LOPEZ to avoid the laws of the United States of America, and the State of New York, on May 8, 2013, NATURAL IMAGES falsely represented to NORGUARD that NATURAL IMAGES did not perform tree trimming and pruning work that involved the use of ladders.

101.    Prior to and including May 7, 2015, NATURAL IMAGES and LOPEZ entered into a common scheme to avoid the laws of the United States of America, and the State of New York, including but not limited to the laws described above.

102.    In furtherance of the common scheme between NATURAL IMAGES and LOPEZ to avoid the laws of the United States of America, and the State of New York, on May 8, 2013, NATURAL IMAGES falsely represented to NORGUARD that NATURAL IMAGES did not pay cash wages, including but not limited to day laborers, to any of its employees.

103.    In furtherance of the common scheme between NATURAL IMAGES and LOPEZ to avoid the laws of the United States of America, and the State of New York, on May 8, 2013, NATURAL IMAGES falsely represented to NORGUARD that NATURAL IMAGES did not perform work at elevation differentials of over 15 feet in height.

104.    In furtherance of the common scheme between NATURAL IMAGES and LOPEZ to avoid the laws of the United States of America, and the State of New York, on May 8, 2013, NATURAL IMAGES falsely represented to NORGUARD that NATURAL IMAGES did not perform tree trimming and pruning work that involved the use of ladders.

105.    The laws of the United States of America, and the State of New York, including but not limited to the tax and inmigration laws described above, are established to ensure that the government can raise sufficient revenues for goods and services for the public.

106.    The avoidance of the laws of the United States of America, and the State of New York, including tax and immigration laws, causes harm to the individuals and entities that comply with the laws, including but not limited to NORGUARD, by reducing the amount of revenue for goods and services for the public benefit.

107.    The avoidance of the laws of the United States of America, and the State of New York, including tax and immigration laws, causes harm to the individuals and entities that comply with the laws, including but not limited to NORGUARD, by requiring entities that comply with the tax laws to pay a disproportionate share of taxes to raise revenue for goods and services for the public benefit.

## CLAIM FOR WORKERS' COMPENSATION BENEFITS

108.    LOPEZ filed a claim for workers' compensation benefits with the Workers' Compensation Board of the State of New York alleging that he sustained injuries as a result of an accident on May 7, 2015 during the course of his employment with NATURAL IMAGES at the premises located at 3015 Peconic Lane, Peconic, New York.

109.    LOPEZ filed a claim for workers' compensation benefits with the Workers' Compensation Board of the State of New York alleging that he sustained injuries on May 7, 2015 during the course of his employment with NATURAL IMAGES as a result of falling from a tree that was being removed at the premises located at 3015 Peconic Lane, Peconic, New York.

110.    LOPEZ was paid cash wages by NATURAL IMAGES during the time he was employed by NATURAL IMAGES, including but not limited to May 7, 2015 at the premises located at 3015 Peconic Lane, Peconic, New York.

111.    LOPEZ was an employee performing work for NATURAL IMAGES when he was allegedly injured on May 7, 2015 at the premises located at 3015 Peconic Lane, Peconic, New York.

112.    LOPEZ was an independent contractor performing work for NATURAL IMAGES when he was allegedly injured on May 7, 2015 at the premises located at 3015 Peconic Lane, Peconic, New York.

113.   LOPEZ was working at a height over 15 feet when he allegedly sustained injuries on May 7, 2015 at the premises located at 3015 Peconic Lane, Peconic, New York.

114.   LOPEZ was performing tree trimming and pruning work that involved the use of ladders when he was allegedly injured on May 7, 2015 at the premises located at 3015 Peconic Lane, Peconic, New York.

115.   On May 7, 2015, LOPEZ was performing work in furtherance of the common scheme to avoid the laws of the United States of America, and the State of New York, including but not limited to the laws set forth above.

116.   On or about May 7, 2015, LOPEZ presented a claim for workers' compensation benefits to NORGUARD alleging that he sustained injuries on May 7, 2015 during the course of his employment with NATURAL IMAGES as a result of falling from a tree that was being removed at the premises located at 3015 Peconic Lane, Peconic, New York.

117.   On or about May 7, 2015, NATRUAL IMAGES presented a claim for workers' compensation benefits to NORGUARD alleging that LOPEZ sustained injuries on May 7, 2015 during the course of his employment with NATURAL IMAGES as a result of falling from a tree that was being removed at the premises located at 3015 Peconic Lane, Peconic, New York.

**DISCLAIMER AND RESCISSION OF NORGUARD POLICY**

118.   On June 5, 2015, NORGUARD sent correspondence to NATURAL IMAGES disclaiming coverage under the NorGuard Policy for the alleged accident involving LOPEZ on May 7, 2015, returning the premium paid for the NorGuard Policy, and rescinding and voiding the NorGuard Policy *ab initio,* and advising NATURAL IMAGES that the disclaimer and rescission by NORGUARD did not affect the duty of NATURAL IMAGES to provide benefits

and medical expenses to LOPEZ pursuant to the Workers' Compensation Law of the State of New York.

119.    On June 5, 2015, NORGUARD sent correspondence to LOPEZ advising LOPEZ that NORGUARD was disclaiming coverage under the NorGuard Policy for the alleged accident involving LOPEZ on May 7, 2015, had rescinded and voided the NorGuard Policy *ab initio*, and that NorGuard's disclaimer and rescission did not affect the duty of NATURAL IMAGES to provide benefits and medical expenses to LOPEZ pursuant to the Workers' Compensation Law of the State of New York.

## COUNT I

### DECLARATORY JUDGMENT THAT NORGUARD IS NOT OBLIGATED TO DEFEND OR INDEMNIFY NATURAL IMAGES

120.    NORGUARD reasserts, realleges and incorporates by reference paragraphs 1 through 119 above as fully set forth herein.

121.    Prior to May 7, 2015, NATURAL IMAGES knowingly and falsely represented NORGUARD that NATURAL IMAGES did not pay cash wages to some and/or all of its employees with the intent to mislead NORGUARD and to induce NORGUARD to issue the NorGuard Policy.

122.    Prior to May 7, 2015, NATURAL IMAGES and LOPEZ entered into a common scheme to avoid the laws of the United States and the State of New York, and knowingly and falsely represent to NORGUARD that NATURAL IMAGES did not pay cash wages to some and/or all of its employees with the intent to mislead NORGUARD and to induce NORGUARD to issue the NorGuard Policy.

123.    Prior to May 7, 2015, NATURAL IMAGES knowingly and falsely represented NORGUARD that NATURAL IMAGES did not perform work at elevation differentials of over

15 feet in height with the intent to mislead NORGUARD and to induce NORGUARD to issue the NorGuard Policy.

124.    Prior to May 7, 2015, NATURAL IMAGES and LOPEZ entered into a common scheme to avoid the laws of the United States and the State of New York, and knowingly and falsely represent to NORGUARD that NATURAL IMAGES did not perform work at elevation differentials of over 15 feet in height with the intent to mislead NORGUARD and to induce NORGUARD to issue the NorGuard Policy.

125.    Prior to May 7, 2015, NATURAL IMAGES knowingly and falsely represented NORGUARD that NATURAL IMAGES did not perform tree trimming and pruning work that involved the use of ladders with the intent to mislead NORGUARD and to induce NORGUARD to issue the NorGuard Policy.

126.    Prior to May 7, 2015, NATURAL IMAGES and LOPEZ entered into a common scheme to avoid the laws of the United States and the State of New York, and knowingly and falsely represent to NORGUARD that NATURAL IMAGES did not perform tree trimming and pruning work that involved the use of ladders with the intent to mislead NORGUARD and to induce NORGUARD to issue the NorGuard Policy.

127.    Based on the false material representations made by NATURAL IMAGES and/or its agents and/or its authorized representatives, NORGUARD was induced to issue policies of workers' compensation and employer's liability insurance to NATURAL IMAGES, policy number NAWC528955, with effective dates from June 12, 2013 to June 12, 2014, and effective dates from June 12, 2014 to June 12, 2015.

128.    NORGUARD relied upon the false material representations made by NATURAL IMAGES and/or its agents and/or its authorized representatives to issue the NorGuard Policy.

129.    NORGUARD would not have issued the NorGuard Policy to NATURAL IMAGES if NORGUARD had known that one or more of the material representations made by NATURAL IMAGES in connection with the application for insurance were false.

130.    NORGUARD is entitled to a judicial declaration pursuant to  28 U.S.C. §§ 2201, *et seq.* that it is not required to defend or indemnify NATURAL IMAGES for any legal fees, litigation expenses, awards, judgments or settlements in a claim made for workers' compensation benefits made by LOPEZ against NATURAL IMAGES arising out of an accident that allegedly occurred on May 7, 2015 at 3015 Peconic Lane, Peconic, New York.

## COUNT II

### DECLARATORY JUDGMENT THAT NORGUARD IS NOT OBLIGATED TO PAY MEDICAL EXPENSES, INDEMNITY PAYMENTS AND/OR WORKERS COMPENSATION BENEFITS TO LOPEZ

131.    NORGUARD reasserts, realleges and incorporates by reference paragraphs 1 through 130 above as fully set forth herein.

132.    NORGUARD is entitled to a judicial declaration pursuant to 28 U.S.C. §§ 2201, *et seq.* that it is not obligated to pay medical expenses, indemnity payments and/or workers' compensation benefits to LOPEZ  arising out of an accident that allegedly occurred on May 7, 2015 at 3015 Peconic Lane, Peconic, New York.

## COUNT III

### DECLARATORY JUDGMENT THAT NORGUARD POLICY IS RESCINDED AND VOID *AB INITIO*

133.    NORGUARD reasserts, realleges and incorporates by reference paragraphs 1 through 132 above as fully set forth herein.

134.    NORGUARD is entitled to a judicial declaration pursuant to 28 U.S.C. §§ 2201, *et seq.* that a workers' compensation policy of insurance issued by NORGUARD to NATURAL

IMAGES, policy number NAWC528955, with effective dates from June 12, 2013 to June 12, 2014, is rescinded and cancelled *ab initio.*

135.   NORGUARD is entitled to a judicial declaration pursuant to 28 U.S.C. §§ 2201, *et seq.* that a workers' compensation policy of insurance issued by NORGUARD to NATURAL IMAGES, policy number NAWC528955, with effective dates from June 12, 2014 to June 12, 2015, is rescinded and cancelled *ab initio.*

## COUNT IV

### FRAUD

136.   NORGUARD reasserts, realleges and incorporates by reference paragraphs 1 through 135 above as fully set forth herein.

137.   As a result of NATURAL IMAGES's false representations, NORGUARD has sustained damages, including but not limited to attorneys' fees, litigation costs, expenses, exposure to indemnity payments to LOPEZ, etc.

138.   As a result of NATURAL IMAGES and LOPEZ's common scheme and false representations, NORGUARD sustained damages, including but not limited to attorneys' fees, litigation costs, expenses, exposure to indemnity payments to LOPEZ, etc.

139.   As a result of NATURAL IMAGES and LOPEZ's collusion and false representations, NORGUARD sustained damages, including but not limited to attorneys' fees, litigation costs, expenses, exposure to indemnity payments to LOPEZ, etc.

140.   As a result of NATURAL IMAGES's false representations, NORGUARD is entitled to damages it has incurred and continues to sustain.

141.   As a result of NATURAL IMAGES and LOPEZ's common scheme and false representations, NORGUARD is entitled to damages it has incurred and continues to sustain.

## COUNT V

## CIVIL CONSPIRACY

142.   NORGUARD reasserts, realleges and incorporates by reference paragraphs 1 through 141 above as fully set forth herein.

143.   Prior to May 7, 2015, NATURAL IMAGES and LOPEZ conspired to defraud NORGUARD by representing that NATURAL IMAGES did not pay cash wages to some and/or all of its employees with the intent to mislead NORGUARD and to induce NORGUARD to issue the NorGuard Policy.

144.   Prior to May 7, 2015, NATURAL IMAGES acted in furtherance of the conspiracy of its conspiracy with LOPEZ by knowingly and falsely representing to NORGUARD that NATURAL IMAGES did not pay cash wages to some and/or all of its employees with the intent to mislead NORGUARD and to induce NORGUARD to issue the NorGuard Policy.

145.   Prior to May 7, 2015, NATURAL IMAGES and LOPEZ conspired to defraud NORGUARD by representing that NATURAL IMAGES did not perform work at elevation differentials of over 15 feet in height with the intent to mislead NORGUARD and to induce NORGUARD to issue the NorGuard Policy.

146.   Prior to May 7, 2015, NATURAL IMAGES acted in furtherance of the conspiracy of its conspiracy with LOPEZ by knowingly and falsely representing to NORGUARD that NATURAL IMAGES did not perform work at elevation differentials of over 15 feet in height with the intent to mislead NORGUARD and to induce NORGUARD to issue the NorGuard Policy.

147.   Prior to May 7, 2015, NATURAL IMAGES and LOPEZ conspired to defraud NORGUARD by representing that NATURAL IMAGES did not perform tree trimming and pruning work that involved the use of ladders with the intent to mislead NORGUARD and to induce NORGUARD to issue the NorGuard Policy.

148.   Prior to May 7, 2015, NATURAL IMAGES acted in furtherance of the conspiracy of its conspiracy with LOPEZ by knowingly and falsely representing to NORGUARD that NATURAL IMAGES did not perform tree trimming and pruning work that involved the use of ladders with the intent to mislead NORGUARD and to induce NORGUARD to issue the NorGuard Policy.

149.   Based on the false material representations made by NATURAL IMAGES and/or its agents and/or its authorized representatives in furtherance of its conspiracy with LOPEZ, NORGUARD was induced to issue policies of workers' compensation and employer's liability insurance to NATURAL IMAGES, policy number NAWC528955, with effective dates from June 12, 2013 to June 12, 2014, and effective dates from June 12, 2014 to June 12, 2015.

150.   NORGUARD relied upon the false material representations made by NATURAL IMAGES and/or its agents and/or its authorized representatives made in furtherance of its conspiracy with LOPEZ to issue the NorGuard Policy.

151.   NORGUARD would not have issued the NorGuard Policy to NATURAL IMAGES if NORGUARD had known that one or more of the material representations made by NATURAL IMAGES in connection with the application for insurance were false.

152.   As a result of NATURAL IMAGES and LOPEZ's conspiracy, NORGUARD sustained damages, including but not limited to attorneys' fees, litigation costs, expenses, exposure to indemnity payments to LOPEZ, etc.

153.    As a result of NATURAL IMAGES and LOPEZ's conspiracy, NORGUARD is entitled to damages it has incurred and continues to sustain.

**JURY DEMAND**

154.    NORGUARD requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

**WHEREFORE,** the plaintiff NORGUARD INSURANCE COMPANY prays that this Court enter the following relief:

1.    A judicial declaration that pursuant to 28 U.S.C. §§ 2201, *et seq.* that plaintiff NORGUARD INSURANCE COMPANY is not obligated to defend or indemnify defendant NATURAL IMAGES LANDSCAPING, INC. for any legal fees, litigation expenses, awards, judgments or settlements in a claim made for workers' compensation benefits made by defendant MANUEL ESTUARDO LOPEZ against defendant NATURAL IMAGES LANDSCAPING, INC. arising out of an accident that allegedly occurred on May 7, 2015 at 3015 Peconic Lane, Peconic, New York involving MANUEL ESTUARDO LOPEZ;

2.    A judicial declaration that pursuant to 28 U.S.C. §§ 2201, *et seq.* that NORGUARD INSURANCE COMPANY is not obligated to pay medical expenses, indemnity payments and/or workers' compensation benefits to defendant MANUEL ESTUARDO LOPEZ arising out of an accident that allegedly occurred on May 7, 2015 at 3015 Peconic Lane, Peconic, New York;

3.    A judicial declaration that pursuant to 28 U.S.C. §§ 2201, *et seq.* that the workers' compensation policy of insurance issued by plaintiff NORGUARD INSURANCE COMPANY to defendant NATURAL IMAGES LANDSCAPING, INC., policy number NAWC528955, with effective dates from June 12, 2013 to June 12, 2014, is rescinded and cancelled *ab initio;*

4.      A judicial declaration that pursuant to 28 U.S.C. §§ 2201, *et seq.* that the workers' compensation policy of insurance issued by plaintiff NORGUARD INSURANCE COMPANY to defendant NATURAL IMAGES LANDSCAPING, INC., policy number NAWC528955, with effective dates from June 12, 2014 to June 12, 2015, is rescinded and cancelled *ab initio;*

5.      An award of damages to the plaintiff NORGUARD INSURANCE COMPANY from defendants NATURAL IMAGES LANDSCAPING, INC. and/or MANUEL ESTUARDO LOPEZ for fraud;

6.      An award of damages to the plaintiff NORGUARD INSURANCE COMPANY from defendants NATURAL IMAGES LANDSCAPING, INC. and MANUEL ESTUARDO LOPEZ for civil conspiracy;

7.      An award of attorneys' fees in favor of plaintiff NORGUARD INSURANCE COMPANY from defendants; and/or

8.      Such other and further relief as this Court deems equitable and just under the circumstances.

Dated: August 27, 2015

<div style="margin-left: 40%;">

RUSSO & TONER, LLP
Attorneys for Plaintiff
NORGUARD INSURANCE COMPANY
33 Whitehall Street, 16th Floor
New York, New York 10004
Phone: (212) 482-0001
Facsimile: (212) 482-0002
sdyki@russotoner.com

By: _____
STEVEN R. DYKI
EDNY Attorney #: SD1190

</div>