UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
NORGUARD INSURANCE COMPANY, a
Pennsylvania Insurance Company,

                                Plaintiff,

          -against-

MANUEL ESTUARDO LOPEZ, an
undocumented person, and NATURAL
IMAGES LANDSCAPING, INC., a
New York corporation,

                                Defendant.
-------------------------------------------------------X

**MEMORANDUM & ORDER**

Civil Action No. 15-5032(DRH)(AYS)

**APPEARANCES:**

**Russo & Toner, LLP**
Attorneys for Plaintiff NorGuard Insurance Company
33 Whitehall Street, 16th Floor
New York, New York 10004
By:    Steven R. Dyki, Esq.

**Harfenist Kraut & Perlstein, LLP**
Attorneys for Defendant Natural Images Landscaping, Inc.
3000 Marcus Avenue, 2nd Floor East
Lake Success, New York 11042
By:    Steven J. Harfenist, Esq.

**Dell & Dell,  PLLC**
Attorneys for Defendant Manuel Estuardo Lopez
1225 Franklin Avenue, Suite 450
Garden City, New York 11530
By:    Joseph G. Dell, Esq.

**HURLEY, Senior District Judge:**

       Plaintiff NorGuard Insurance Company ("Plaintiff" or "NorGuard") commenced this

action seeking a declaratory judgment that (1) it is not obligated to defend or indemnify

defendant Natural Images Landscaping, Inc. ("NIL") in a claim for worker's compensation benefits made by defendant Manuel Estuardo Lopez ("Lopez"); (2) it is not obligated to pay medical expenses, indemnity payments or workers' compensation benefits to Lopez; and (3) the worker's compensation and employer's liability policies of insurance issued by NorGuard to NIL for the periods June 12, 2013 to June 12, 2014 and June 12, 2014 to June 12, 2015 are rescinded and cancelled *ab initio*. NorGuard also asserts claims for fraud and civil conspiracy. Presently before the Court is NIL's motion to dismiss the complaint in its entirety, NIL's motion for Rule 11 sanctions, NorGuard's motion for a default judgment against Lopez, and Lopez's cross-motion to vacate the default noted against him. For the reasons set forth below, NIL's motion to dismiss is granted in part and denied in part, NIL's motion for sanctions is denied, NorGuard's motion for a default judgment is denied and the claims against Lopez are dismissed.

## I.  FACTUAL BACKGROUND

The following allegations are taken from the Complaint:

**A.     The Application for and Issuance of the Insurance Policy**

On or about May 8, 2013, NIL submitted an application for worker's compensation and employer's liability insurance to NorGuard. The application for insurance required NIL to state whether it (1) paid cash to its employees; (2) performed work at elevation differentials over 15 feet in height; and (3) performed tree trimming and pruning work that involved the use of ladders. In each instance, NIL through its "agents" or "authorized representatives" answered that it did not. Those representations are alleged to be false because NIL did, in fact, pay cash wages to its employees, including Lopez, and its employees both performed work at elevations over 15 feet and used ladders to perform tree trimming and pruning work. Each of these representations

were material to NorGuard because they affected either the potential amount of any losses, the potential for fraudulent claims, and/or the ability to verify claims. (Compl. ¶¶ 18-51.)

In reliance on NIL's representations, NorGuard issued policies of workers' compensation and employer's liability insurance to NIL with effective dates of June 12, 2013 to June 12, 2014 and June 12, 2014 to June 12, 2015 (collectively the "Policy"). Had it known that these representations were false, NorGuard would not have issued the Policy. (Compl. ¶¶ 52-54.)

**B.    NIL's and Lopez' Avoidance of Federal and State Laws**

According to the Complaint, Lopez violated a number of federal and state statutes by, among other things, illegally entering the United States, concealing his immigration status, falsely claiming to be a United States citizen, using a fraudulent visa, committing social security fraud, committing identity theft, and failing to report income and pay federal and state income taxes. (Compl. ¶¶ 55-90.)[1] Additionally, NorGuard violated those federal laws which preclude the knowing employment of illegal aliens. (Compl. ¶¶ 91-93.) NorGuard claims that NIL and Lopez colluded to avoid the referenced federal and state laws and in furtherance of that scheme NIL made the aforementioned misrepresentations concerning cash payments, elevation and ladder use. (Compl. ¶¶ 94-107.)

**C.    Lopez's Claim for Workers' Compensation Benefits**

On May 7, 2015, Lopez was seriously injured while working for NIL when he fell while assisting in the removal of a tree from premises located in Peconic, New York.  He then filed a claim for workers' compensation benefits with the Workers' Compensation Board of the State of

---

[1] These allegations are all made on "information and belief" without any specification as to the basis therefor.

New York.  It is alleged that at the time of his injury he was an employee or independent

contractor performing work for NIL and was using a ladder to perform tree trimming and pruning

work at a height of over 15 feet and was being paid his wages in cash.  (Compl. ¶¶ 108-117.)

**D.      NorGuard's Notice of Disclaimer and Recission of the NIL Policy**

On June 5, 2015, NorGuard sent correspondence to both NIL and Lopez disclaiming

coverage under the Policy for the Lopez's accident, returning the premium paid by NIL,

"rescinding and voiding the policy *ab initio*" and stating that the disclaimer and rescission did not

affect the duty of NIL to provide Workers' Compensation benefits to Lopez. (Compl. ¶¶ 118-19.)

**E.      Proceedings on Lopez' Workers' Compensation Claim before the Board**

The following allegations are taken from the additional materials submitted by the parties.

The Workers' Compensation Board (the "Board") held a hearing on Lopez's claim for

benefits on July 22, 2015. As noticed, the purpose of the hearing was to resolve the period and

extent of Lopez' disability, whether the employer had notice, and the causal relationship of the

accident to the injury and the rate of compensation to be paid to Lopez. (Harfenist Declar., Ex.

D.) NorGuard was represented by counsel at the hearing and raised several defenses, including

the alleged misrepresentations made by NIL and took the position that "the policy . . . was voided

based upon the fact of a material misrepresentation by the employer. As a result of same,

[NorGuard] would not have coverage in connection with this accident." NorGuard's counsel also

asserted that Lopez  has unclean hands as "[b]y accepting cash wages he was avoiding paying

taxes  . . . ." (Harfenist Declar., Ex. E at pp. 2 & 8.) The ALJ conducting the hearing, inter alia,

made the following ruling and findings: (1) Lopez had established a neck injury; (2) directed NIL

to obtain separate counsel; (3) placed the Uninsured Employer Fund ("UEF") on notice because

NorGuard was alleging a voided policy; (4) noted that Lopez was alleging that NorGuard was engaging in dilatory tactics by raising a frivolous controversy; and (5) directed NorGuard to conduct an independent medical examination of Lopez on the causal relationship between his claim and neck injury. (Id. at p. 20; Harfenist Declar., Ex. F.) In addition, another hearing was scheduled for August 24, 2015. (*Id.*)[2]

At the continued hearing on August 24, 2015, the attorney representing NorGuard restated its defense as follows:

> Judge, we are asserting that there is no coverage or employer/employee relationship. We are asserting that coverage was essentially voided as soon as the employer as well as the employee misrepresented himself in a fraudulent manner on the basis that both the employer was violating his agreement with the insurance company and the employee has unclean hands by accepting cash wages, employing an illegal alien and doing so with intent to defraud the federal government of taxes and immigration law. So, we are asserting that based on these facts coverage has been voided, and, therefore, coverage falls under the UEF in this case.

(Harfenist Declar., Ex. H at p. 3). Lopez' attorney then argued that NorGuard's position was contrary to well-settled law, to which NorGuard's counsel responded:

> With regards to the case law that counsel cited, the case law does specifically mention in the opinion that this is based on the misrepresentation of the employer, however, in this case we would like to differentiate it as well in this case as the claimant as well [sic] has unclean hands in this case. The claimant is an illegal

---

[2] The ALJ also directed that Mr. Russo, NorGuard's counsel who authored the letter to Lopez disclaiming coverage for benefits, appear at the next hearing.  NorGuard filed an appeal from the results of the July 22, 2015 hearing to the extent that it directed the appearance of Mr. Russo, on the grounds there is no probative value to his testimony. (Harfenist Declar., Ex. G at p.1). By decision filed February 17, 2016 the Board found that the Notice of Decision filed on August 27, 2015 finding establishment of the claim to Lopez' neck rendered moot the issue regarding the testimony of Mr. Russo. (Harfenist Reply Declar., Ex. J at p. 2.)

> citizen [sic] and has been taking advantage of cash wages,
> specifically, to avoid tax reporting and immigration status.
> Therefore, we would maintain that this to [sic] be differentiated
> from that case law as the claimant has unclean hands.

(Id. at p. 5).   After dismissing NorGuard's allegations regarding Lopez's alleged non-payment of

taxes and taking testimony from Lopez on the existence of employer/employee relationship, the

ALJ made the following findings:

> I'm establishing the injury to the neck. There's no contradicting
> medical evidence. I'm not agreeing with the argument by the
> carrier that they believe that they can retroactively void their policy
> and thereby make it the responsibility of the Uninsured Employer
> Fund. I provided carrier Counsel with a decision. It is the decision
> in the matter of Jesus Cruz, [17 A.D.3d 19] wherein it's outlined
> specifically that it's against public policy to do so. So I am finding
> the proper carrier to be NorGuard.

(*Id.* at pp. 19-20). The written Notice of Decision issued after the August 24, 2015 hearing

contained the following: "AWARD: The employer or insurance carrier is directed to pay the

following awards, less payments already made by the employer or carrier, for the periods

indicated below, unless employer or carrier files an application within 30 days after the date on

which the decision was duly filed and served." (Harfenist Declar., Ex. I.) NIL reports (and

NorGuard does not dispute) that NorGuard did not appeal this decision.

On December 14, 2015, a Notice of Decision was filed regarding a hearing held on

December 9, 2015. Among other things, it held in abeyance NorGuard's application pursuant to

N.Y. Workers Comp. Law § 25(1)(f). [3] (Dyki Declar. Ex. 2.)

---

[3] Section 25(1)(f) provides:
> Whenever compensation is withheld solely because a controversy
> exists on the question of liability as between insurance carriers,
> surety companies, the special disability fund, the special fund for
> reopened cases, or an employer, the board may direct that any

No further information regarding the Workers' Compensation proceeding is included in the motion papers.

## II. PROCEDURAL BACKGROUND

NorGuard commenced this action on August 27, 2015. On October 6, 2015, it moved for certificates of default against both NIL and Lopez, which certificates were granted by the Clerk of Court on October 7, 2015. On October 14, 2015, NIL sought a pre-motion conference for its proposed motion to vacate the certificate of default. A pre-motion conference was held and NorGuard was directed to file a letter advising the Court whether it consented to vacatur, and if not, the pre-motion conference letter would be deemed the motion and Plaintiff should file its opposition. Plaintiff did not consent to vacatur and filed opposing papers. By Order dated November 23, 2015, NIL's motion to vacate the certificate of default was granted. Thereafter, on March 4, 2016, it filed a motion to dismiss and a motion for sanctions.

In the interim, NorGuard sought permission to file a motion for a default judgment against Lopez and the Court directed that said motion be filed on or before June 30, 2016. On

---

carrier, surety company, the special disability fund, the special fund for reopened cases shall immediately pay compensation and bills for medical care to the extent payable in accordance with sections thirteen-g, thirteen-k, thirteen-l and thirteen-m of this chapter, pending determination of such issue. Any such payment or payments shall not be deemed an admission against interest by the carrier, surety company, special disability fund or the special fund for reopened cases. After final determination, the parties shall make the necessary and proper reimbursement including the payment of simple interest at the rate established by section five thousand four of the civil practice law and rules in conformity with such determination.

N.Y. Workers' Comp. Law § 25(1)(f).

June 29, 2016, a notice of appearance and request for extension of time to answer was filed by

Lopez. The next day NorGuard filed its motion for a default judgment.  Pursuant to a Scheduling

Order issued by the Court, Lopez filed opposition to the motion for default judgment and a cross-

motion to vacate his default and permit the filing of an answer.

### III.  DISCUSSION - NIL's MOTION TO DISMISS

**A.        Motion to Dismiss Standard of Review**

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court

should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual

allegations to be true, and determine whether they plausibly give rise to an entitlement to relief."

*Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted).

The plausibility standard is guided by two principles. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *accord Harris v. Mills*, 572 F.3d 66,

71–72 (2d Cir. 2009).

First, the principle that a court must accept all allegations as true is inapplicable to legal

conclusions. Thus, "threadbare recitals of the elements of a cause of action supported by mere

conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Although "legal conclusions can

provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.

A plaintiff must provide facts sufficient to allow each named defendant to have a fair

understanding of what the plaintiff is complaining about and to know whether there is a legal

basis for recovery.  *See Twombly*, 550 U.S. at 555.

Second, only complaints that state a "plausible claim for relief" can survive a motion to

dismiss. *Iqbal,* 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that defendant acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line' between possibility and plausibility of 'entitlement to relief.' " *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted); *see In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007).  Determining whether a complaint plausibly states a claim for relief is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *accord Harris*, 572 F.3d at 72.

In considering a motion to dismiss pursuant to Rule 12(b)(6), a court is generally limited to the complaint and documents attached thereto. *See* Fed. R. Civ. P. 12(d); *Nakahata v. N.Y.-Presbyterian Healthcare Sys.*, Inc., 723 F.3d 192, 202 (2d Cir. 2013). A court "'may also consider matters of which judicial notice may be taken.'" *Apotex Inc. v. Acorda Therapeutics, Inc.* – F.3d –, 2016 WL 2848911, *5 (2d Cir. May 16, 2016) (quoting *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008)); *see Bristol v. Nassau County*, 2016 WL 2760339 (E.D.N.Y. May 12, 2016) ("On a motion to dismiss, consideration is limited to the factual allegations in plaintiff's amended complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiff's possession or of which plaintiff had knowledge and relied on in bringing suit.") (internal quotation marks omitted).

It is appropriate for a court considering a motion to dismiss to "take judicial notice of records of state administrative procedures, as these are public records." *Evans v. The New York*

*Botanical Garden*, 2002 WL 31002814, at *4 (S.D.N.Y. Sept. 4, 2002).  Records of the Workers Compensation Board, including transcripts and decisions, "are analogous to a 'state administrative procedure' and thus may be considered on a motion to dismiss." *Dutton v. Swissport USA, Inc.*, 2005 WL 1593969, at *1, n.1 (E.D.N.Y. July 1, 2005); *cf. Foster v. Diop*, 2013 WL 1339408, at n.5 (E.D.N.Y. Mar. 13, 2013) (considering transcripts of a parole revocation hearing on a motion to dismiss); *Holmes v. Fresh Direct*, 2015 WL 4885216 (E.D.N.Y. Aug. 5, 2015) (taking judicial notice of EEOC proceedings); *see generally Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir.1998) (Courts "may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.") (internal quotation marks omitted).

**B.      Summary of Arguments**

NIL asserts four arguments in support of its dismissal motion. First, it asserts that a workers' compensation policy cannot be voided *ab initio* or retroactively cancelled and as NorGuard's policy was in effect on the date of Lopez's accident, NorGuard is responsible for the payment of Lopez's workers' compensation benefits and its three declaratory judgment claims are barred as a matter of law. (NIL's Mem. at 11-13.) Second, it maintains that collateral estoppel bars NorGuard's claims to rescind the policy because that claim was raised before and rejected by the Workers' Compensation Board Administrative Law Judge and NorGuard did not appeal that decision. (*Id.* at 14-16.) Third, the cause of action for fraud "must suffer the same fate as its equitable claims" because "[a]ll of the issues implicated by the fourth cause of action - both legal and factual - have already been decided adversely to NorGuard [by the Workers'

10

Compensation] Board . . . . Put simply, if the Workers' Compensation Law requires NorGuard to

honor its contractual obligations to pay workers'compensation benefits to Lopez and indemnify,

then it cannot have any damages for fraud." (*Id.* at 16-17.) Finally, the allegations  of NorGuard's

claim for civil conspiracy are legally insufficient. (*Id.* at 17-18.) NIL also seeks to recover its

attorneys' fees and costs from NorGuard in defending this action.

In its opposition, NorGuard maintains that "New York law is not settled regarding

rescission of worker's compensation policies and [the] cases relied upon by [NIL] are

distinguishable from [the] case *sub judice* because [NIL] and Lopez both participated in [a]

common scheme to defraud NorGuard." (Pl.'s Mem. in Opp. at 4.) In addition, the issues raised

by NorGuard have not been finally determined and collateral estoppel is not applicable. (*Id.* at 7-

9.)

## C.      Overview of New York Workers' Compensation Law.

Inasmuch as this case revolves around New York's Workers' Compensation system, a

brief overview of that system is in order.

The Workers' Compensation Law ("WCL") replaced "the common law liability of a

master to his or her servant" for injuries or death and provides for "expanded liability regardless

of the foreseeability of the injury or fault of the employer and, generally, regardless also of the

fault of the employee . . . ." 109 N.Y. Jur. 2d Workers' Compensation § 1 (2d ed., August 2016

Update). It requires employers to pay benefits, such as medical care and replacement of lost

wages,  to workers who are injured or disabled during the course of their employment, regardless

of fault. N.Y. Workers Comp. Law §§ 10(1), 13, 14, 16; *see Liberty Mut. Ins. Co. v. Hurlbut*, 585

F.3d 639, 641 (2d Cir. 2009). "In light of its beneficial and remedial character the Workmen's

11

Compensation Law [is] construed liberally in favor of the employee." *Wolfe v. Sibley, Lindsay & Curr Co.*, 36 N.Y.2d 505, 369 N.Y.S.2d 637, 640 (1975) (citation omitted).

With certain statutory exceptions not relevant here, to assure that the benefits are paid the law requires every employer with one or more employee in New York to maintain workers' compensation coverage for its employees. N.Y. Workers Comp. Law §§ 2(3), 10. A failure to obtain worker's compensation coverage carries both civil and criminal penalties. *See* N.Y. Workers Comp. Law §§ 50, 52. Moreover, the statute provides:

> If at any time an employer intentionally and materially understates or conceals payroll, or intentionally and materially misrepresents or conceals employee duties so as to avoid proper classification for calculation of premium paid to secure compensation, or intentionally and materially misrepresents or conceals information pertinent to the calculation of premium paid to secure compensation, such employer shall be deemed to have failed to secure compensation and shall be subject to the sanctions applicable to this section.

N.Y. Workers Comp. Law §52(1)(d).

"To protect against an injured employee being unable to receive benefits because the employer did not provide for the payment of compensation, the legislature created an Uninsured Employers Fund (U.E.F.). The U.E.F. assumes the responsibility for the payment of compensation and other benefits under the Workers' Compensation Law for awards made against uninsured employers for injuries to their employees . . . ." N.Y. Prac. - Workers' Compensation § 9:8 (2d ed., May 2016 Update) (hereinafter "N.Y. Prac. - WC") (citing N.Y. Workers Comp. Law § 26-a).

Coverage can be provided either by purchasing a policy from the New York State Insurance Fund, purchasing a policy from a private insurance company authorized to issue

workers' compensation coverage in New York, or by self-insurance as authorized by the

Chairperson of the Workers' Compensation Board. N.Y. Workers Comp. Law at § 50. Worker's

compensation policies are standard form policies; "The policy must provide for the right of the

Chair of the Board to require the carrier to make payment to a disabled employee entitled to

benefits from the employer covered by the policy."  N.Y. Prac. - WC § 17:1. A carrier is not

relieved of its obligations under the contract of insurance even if the employer becomes

bankrupt, insolvent, or cannot be located to proceed against. *Id*. (citing  N.Y. Workers Comp.

Law § 54(4)).

New York's workers' compensation system is administered by the Workers'

Compensation Board (the "Board"), which consists of thirteen members. N.Y. Prac. - WC §§ 6:1,

6:3. In addition to hearing and determining all claims for compensation or benefits, the powers of

the Board include approving agreements, approving and fixing attorney's fees and claims for

medical services, modifying or rescinding awards and certifying questions to the Appellate

Division, Third Department of the New York Supreme Court. *Id.*§ 6:3;  N.Y. Workers Comp.

Law § 142. If there is a question as to whether an insurance policy has been cancelled or not

renewed, the Board has authority to decide whether a carrier is still responsible. N.Y. Prac. - WC

§ 9:8 (citing *Moorehead v. Union Press Co*., 259 A.D.2d 906, 687 N.Y.S.2d 753 (3d Dept.

1999).)

An injured employee who seeks workers' compensation benefits must file a claim with

the Board or his employer. N.Y. Workers Comp. Law § 20.  The  insurance carrier is afforded the

opportunity to dispute the claim, *id*. § 25(2)(a);  12 N.Y. Comp. Codes R. & Regs. § 300.22(a),

and the dispute is addressed in the first instance by a Workers' Compensation Law Judge

13

("WCLJ"), *see* N.Y. Workers Comp. Law § 150; 12 N.Y. Comp. Codes R. & Regs. § 300.1(a)(10). A party may seek administrative review of the decision of the WCLJ by a three-member Board panel and, if review is granted and the panel does not make a unanimous decision, review of the full Board is mandated upon request of either party; if the decision is unanimous, any party may seek discretionary review by the full Board. The statutory scheme allows a party to seek judicial review of the Board's administrative decision in the New York State Supreme Court, Appellate Division, Third Department.  N.Y. Workers Comp. Law § 23. A single court was designated for this purpose so as to establish a judicial forum having "specific expertise to deal with the complexity" of the issues presented in workers' compensation cases. *Empire Ins. Co. v. Workers' Comp. Bd.*, 201 A.D.2d 425, 607 N.Y.S.2d 675, 675  (1st Dept. 1994). Appeals in workers' compensation cases "shall be heard in a summary manner and shall have precedence over all other civil cases in such court." N.Y. Workers' Comp. Law § 23. Further review may be sought in the New York State Court of Appeals. An appeal, whether to the Third Department or the New York Court of Appeals "shall not operate as a stay of the payment of compensation required by the terms of the award or of the payment of the doctors' bills found to be fair and reasonable." *Id*.

Additional aspects of  New York's Workers' Compensation Law shall be discussed as relevant to the issues in this case.

**D.    The Claims for Declaratory Relief**

With this background in mind, the Court turns to Plaintiff's claims for declaratory relief. NIL moves to dismiss these claims on the basis that a workers' compensation policy cannot be voided *ab initio* or retroactively cancelled  and because they are barred by collateral estoppel.

14

1.    <u>Standard for Ascertaining State Law</u>

NIL's claims for declaratory relief are governed by New York law. In ascertaining the law of New York, this Court "looks to the decisional law of [New York] as well as to the state's constitution and statutes." *Travelers Ins. Co. v. 633 Third Assoc.,* 14 F.3d 114, 119 (2d Cir. 1994). Where the state law is ambiguous or uncertain or there is an absence of authoritative law from the state's highest court, "the job of the federal courts is carefully to predict how the highest court of the forum state would resolve the uncertainty or ambiguity." *Phansalkar v. Andersen Weinroth & Co.,* 344 F.3d 184, 199 (2d Cir. 2003) (quoting *Travelers*, 14 F.3d at 119); *accord DiBella v. Hopkins*, 403 F.3d 102, 111 (2d Cir. 2005). In doing so, the federal court "must give 'fullest weight' to the decisions of a state's highest court and 'proper regard' to the decisions of a state's lower courts." *Phansalkar*, 344 F.3d at 199 (quoting *Travelers*, 14 F.3d at 119). Decisions of a state's intermediate and lower courts are not binding on the federal courts. "[W]e consider the language of the state courts to be helpful indicators of how the state's highest court would rule. Although we are not strictly bound by state intermediate appellate courts, rulings from such courts are a basis for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *DiBella,* 403 F.3d at 112 (internal quotations and citations omitted); *accord Zaretsky v. William Goldberg Diamond Corp.*,  820 F.3d 513, 521 (2d. Cir. 2016); *see also Comm'r v. Estate of Bosch*, 387 U.S. 456, 465 (1967) (even though the decisions of lower state courts are not controlling "where the highest court of the State has not spoken on the point," such decisions "should be attributed some weight") (internal quotation marks omitted).

2.      Whether New York Law Permits a Workers' Compensation Insurance
        Policy to be Voided *Ab Initio* or Retroactively Cancelled

 NIL seeks dismissal of the first three causes of action which seek declaratory judgments

that (1) the Policy is rescinded and void ab initio; (2) NorGuard need not defend or indemnify

NIL; and (3) NorGuard is not obligated to pay Lopez's medical expenses or other benefits due

under the WCL, as barred as a matter of law. It argues that "[u]nlike many other contracts of

insurance a workers' compensation policy . . . can only be terminated prospectively. . . [a]nd such

termination must in strict conformity with [section 54(5)] of the WCL." (NIL Mem. at 11.)

NorGuard responds that "it is not well settled New York law that workers' compensation policies

cannot be voided ab initio under all circumstance" as the cases relied on by NIL are not from the

New York Court of Appeals and "pertain[] only to those situations when an employer has made a

misrepresentation and the employee is otherwise 'innocent.' " (Pl.'s MTD Opp. Mem. (DE 250)

at 2.)

 In *Cruz v. Millenium Const. & Restoration Corp*, 17 A.D.3d 19, 793 N.Y.S.2d 548 (3d

Dept. 2005), the Appellate Division, Third Department held that an insurance company could not

declare a workers compensation policy carrier void ab initio. After an investigation into an

accident revealed that the employer had made misrepresentations[4] in its application for workers

compensation coverage, the carrier notified the employer that it was rescinding the policy

pursuant to N.Y. Insurance Law 3105(b). Before the Board, the carrier claimed it had no

obligation under the policy to any of the employer's workers injured in the accident because the

policy was properly declared void ab initio. The Board determined § 3105 (b)  could not be used

_____

        [4] The misrepresentations in *Cruz* related to the scope of work to be performed on a
building reconstruction project. 17 A.D.3d at 20 & n.1.

16

to circumvent § 54(5) of the WCL[5] which sets the requirements for cancellation of a policy and the carrier appealed. 17 A.D.3d at 20-21; 793 N.Y.S.2d at 549.

The *Cruz* Court began its analysis with N.Y. Insurance Law § 3105 which, as a general rule, allows an insurance carrier to void an insurance contract if the insured made a false statement of fact as an inducement to obtain a contract of insurance and the false statement was material, i.e., knowledge of that falsity would have led to a refusal by the insurer to issue the policy. 17 A.D.3d at 21. It noted that although the provision can be used to rescind many different types of insurance policies, such as disability, life, health, and fire, retroactive cancellation is unavailable for no fault coverage as § 313 of the Vehicle and Traffic Law "mandates" that the cancellation of such policies may only be effected prospectively. *Id.* at 22 (citing cases). In the *Cruz* court's estimation, the rationale that precludes retroactive cancellation of no fault policies is equally applicable to workers' compensation policies, citing first the

---

[5]WCL § 54(5) provides in pertinent part:

> Cancellation and termination of insurance contracts. No contract of insurance issued by an insurance carrier against liability arising under this chapter shall be cancelled within the time limited in such contract for its expiration unless notice is given as required by this section. When cancellation is due to non-payment of premiums and assessments, such cancellation shall not be effective until at least ten days after a notice of cancellation of such contract, on a date specified in such notice, shall be filed in the office of the chair and also served on the employer. When cancellation is due to any reason other than non-payment of premiums and assessments, such cancellation shall not be effective until at least thirty days after a notice of cancellation of such contract, on a date specified in such notice, shall be filed in the office of the chair and also served on the employer . . . .

N.Y. Workers' Comp. Law §54(5).

language of WCL §54(5).

> [T]he language of Workers' Compensation Law § 54(5), like
> Vehicle and Traffic Law § 313, "is comprehensive and all-
> embracing." Entitled "Cancellation and termination of insurance
> contracts" it sets forth the specific mechanism by which a carrier
> must cancel a contract of workers' compensation insurance "due to
> non-payment of premiums" or "any other reason other than non-
> payment of premiums." No matter what the reason for the
> cancellation, the statute requires that a written notice of
> cancellation, with the cancellation date specified in the notice, be
> filed with the Board's chair and served on the employer.
> Cancellation for nonpayment does not take effect until 10 days
> from such filing and service and cancellation for any other reason
> does not take effect until at least 30 days thereafter. This broad
> language would include voiding a contract for fraud thereby
> making it impossible to have ab initio rescission.

*Id*. at 22-23 (internal citations omitted).  The *Cruz* court also reasoned that policy considerations

also supports precluding the retroactive cancellation of workers compensation policies.

> [W]e find it difficult to reconcile the existence of a right to rescind
> a workers' compensation policy ab initio with the policy
> considerations underlying the compulsory workers' compensation
> statutory scheme, namely, to surely and swiftly compensate an
> injured employee or a dependent of a deceased employee. The
> serious potential adverse effects of retroactive cancellation on
> employees mandate exacting and strict compliance with the
> requirements for cancellation and termination under Workers'
> Compensation Law § 54(5), even when such termination is based
> on fraud perpetrated by the employer.

*Id.* at 23 (internal citations omitted). *Accord Pinot v. Straight Line Constr. Corp.*, 123 A.D.3d

1365, 1 N.Y.S.2d 391 (3d Dept. 2014).

Although *Cruz* was not decided by New York's highest court, its holding is entitled to

proper regard not only because it is  intermediate appellate court and plaintiff has presented no

"other persuasive data that the highest court of the state would decide otherwise," *DiBella,* 403

F.3d at 112, but because it is the court designated by the New York State legislature to review the Board's decisions and therefore has developed specific expertise to deal with the issues presented in workers' compensation cases, see *Empire Ins. Co.,* 607 N.Y.S.2d at 675.  In addition, the New York Court of Appeals decisions discussed below support the *Cruz* court's conclusion.[6]

First, the New York Court of Appeals has found that other statutory schemes which require notice prior to cancellation preclude rescission ab initio on the ground of fraud.  In *Teeter v. Allstate Insurance Co.*, 9 N.Y.2d 655 (1961), *affirming mem.*, 9 A.D.2d 176 (4th Dept. 1959) the Court of Appeals affirmed the holding of the Appellate Division that the common law right of rescission ab initio for fraud did not survive the adoption of section 313 of the N.Y. Vehicle Traffic Law and, in accordance with that provision, cancellation of an automobile insurance policy may only be done prospectively. Similarly, in *Aetna Cas & Sur. Co. v. O'Connor*, 8 N.Y.2d 359 (1960), the New York Court of Appeals held that statutorily mandated provisions in assigned risk automobile policies abrogated  the right to rescind such a policy ab initio.

---

[6] Although not cited by either party, the Court is aware that its conclusion is contrary to that in *Royal Insur. Co. of Amer. v. LaPietra Contracting Corp.*, 1997 WL 37048 (E.D.N.Y. 1997)  and *Guard Insur. Group, Inc. v. Reliable Insur. Serv., LLC*, 2016 WL 542131 (E.D.N.Y. Feb. 9, 2016). In *Royal Insurance,* the carrier sued to declare a workers compensation policy void due to alleged misrepresentations by the employer. The court rejected the argument that dismissal of the claim was warranted  because the carrier could not disclaim coverage as it had not complied with the statutory procedures for cancellation, holding that the carrier was not required to comply with WCL § 54(5) "as a prerequisite to suit." *Id*. at *4. That case was decided before the decision in *Cruz* and therefore the *Royal Insurance* Court did not have the benefit of its rationale. Nor does *Royal Insurance* decision discuss the other cases referenced herein to support this Court's conclusion. Finally, the carrier in that case "did not dispute its statutory obligation to pay the [injured employee] workers compensation benefits." *Id*. The *Guard Insurance* court also held that a workers compensation carrier was entitled to rescind a policy ab initio which it alleged was issued in reliance of material misstatements. That case, however, was in the context of a motion for default judgment against the employer and also did not discuss *Cruz* or the other cases relied upon by this Court.

More importantly, the New York Court of Appeals has held that despite false representations by an employer, a workers compensation insurance carrier remains liable to an injured employee absent the notice required by WCL 54. *See Aioss v. Sardo*, 249 N.Y. 270 (1928) (per curiam). In *Aioss*, the issuer of a workers' compensation policy argued that the policy was void because of a misrepresentation by the employer and therefore it had no liability to the injured employee. 223 A.D. 201, 202, 227 N.Y.S. 708 (3d Dept. 1928).  Citing § 54 of the WCL, the Appellate Division held that "having issued and delivered the policy, the carrier cannot be released from liability to an injured employee of the insured except by giving such notice of cancellation. The law is part of every compensation insurance contract." 223 A.D. at 203. Accordingly, "[n]o question of warranties or false representations made by the employer in securing the policy and no stipulations of the policy as between the employer and carrier have force or effect as between the carrier and such employee who was injured while the policy is outstanding."  The carrier appealed. The New York Court of Appeals affirmed, holding that "as between the insurance carrier and the employee the fact that a policy is issued upon untrue statements made by the employer is no defense. To relieve the carrier of liability, there must be a cancellation as provided in section 54." 249 N.Y. at (1928) (citing *Hastings v. Westchester Fire Ins. Co.*, 73 N.Y. 141).)

In an attempt to distinguish *Cruz*, plaintiff argues, without any supporting authority, that its holding is inapplicable  because "it is not only the employer, [NIL], who fraudulently induced NorGuard to issue its Policy by virtue of its misrepresentations, but it is also the employee, Lopez, who participated in the common scheme and civil conspiracy that included the fraudulent representation to NorGuard." (Pl.'s MTD Opp. Mem. (DE 250) at 5.)  The Court does not agree.

20

Initially, the Court notes that, according to the complaint, the false representations to secure the policy were made by NIL.  To the extent that NorGuard seeks to hold Lopez for those representations, there are no factual allegations that would support such liability.  For example, it is not alleged that Lopez is an officer or even a manager of NIL, that he saw or participated in the preparation of NIL's application to NorGuard, or even that he was employed by NIL at the time the application was made.  The absence of any such allegations renders implausible plaintiff's claim that Lopez, a mere employee (and possibly a "day laborer," (*see, e.g.,* Compl. at ¶¶ 31, 32)) participated in the misrepresentations to NorGuard. Indeed, there are no factual allegations that would support the inference that Lopez even had any idea of what type of questions were asked on the application for insurance.  At best, it is the allegation that Lopez violated various immigration and taxes laws that could support distinguishing *Cruz* from the present case. However, the courts of New York have refused to disqualify an employee from receiving workers' compensation benefits because of illegal activity, including their status as an undocumented alien.

In *Richardson v. Fiedler Roofing*, 67 N.Y.2d 246 (1986), the New York Court of Appeals rejected the proposition that an employee is excluded from compensation benefits, as a matter of law, if he is engaged in an illegal activity at the time of the accident. Therein, the employee while at his place of work on a roof, waiting for materials to arrive, moved to another part of the structure and slipped and fell to his death while removing (i.e., stealing) some copper downsprouts to sell as salvage. The Court began its analysis by noting that it has long been recognized that the WCL was enacted "to insure that injured employee might be saved from becoming one of the derelicts of society" and "[t]o further that purpose . . . the statutory

21

obligation to compensate injuries sustained in the course of employment which are casually related to it does not depend on the equities of a particular case, nor may if be avoided because of the workers' fraud or wrongdoing; it is absolute." 67 N.Y.2d at 252 (citing *Matter of Sackowitz v. Hamburg & Co.*, 295 N.Y. 264, 268 (1946).) Further, the only exceptions to liability are found in section 10 of the WCL "which bar compensation occasioned solely by intoxication of the injured employee while on duty or by willful intention of the injured employee to bring about injury or death." *Id.* The *Richardson* court contrasted section 10 of the WCL with section 205,  the latter section specifying that disability benefits, which are not contingent on the disability arising out of employment, are precluded if the disability was occasioned by the perpetration by the employee of an illegal act. "It is one thing to disqualify a claimant for injuries he sustains during the course of an illegal activity pursued on his own time, an activity unknown to the employer and one which it cannot control. It is quite another to deprive dependents benefits because the employee's death results from misconduct during the course of employment when the employer knows about the illegal activity and tolerates it." *Id.* at 253.

The concept that an injured employee's illegal activity does not preclude the recovery of workers' compensation benefits extends to activity illegal under United States Immigration Laws. For example, that the injured employee entered the United States illegally does not disqualify him from the receipt of primary workers compensation benefits. *Testa v. Sorrento Rest., Inc.*, 10 A.D.2d 133, 134-35, 197 N.Y.S.2d 560 (3d Dept. 1960) (cited with approval in *Ramroop v. Flexo-Craft Print, Inc.,* 11 N.Y.3d 160, 168 n.4 (2008).) *See also Balbuena v. IDR Realty LLC*, 6 N.Y.3d 338, 812 N.Y.S.2d 416 (2006) (holding that "plaintiffs' status as aliens who are not legally authorized to work in the United States" did not preclude their recovery of

22

lost earning in their suit to recover for injuries sustained as a result of defendants' purported violations of state Labor Law); *New York Hosp. Med. Ctr. v. Microtech Contracting Corp.*, 22 N.Y.3d 501 (2014) (holding employee's immigration status as an undocumented alien does not deprive employer of WCL's shield against third party claims for common law contribution and indemnification, stating "[i]f the illegality of the employment contract does not defeat the employee's rights under an otherwise applicable state statute, as was the case in *Balbuena*, it is not clear why it would nonetheless annul the employer's statutory rights"); *Madiera v. Affordable Housing Found., Inc.*, 469 F.3d 219 (2d Cir. 2006) (federal immigration law did not preempt New York law allowing undocumented workers injured in a construction accident to recover lost earnings). Moreover, even an undocumented alien who obtains employment through the use of fraudulent identification and submits his claim under a false name is entitled to workers' compensation benefits. *Amoah v. Mallah Mgt, LLC*, 57 A.D.3d 29, 866 N.Y.S.2d 797 (3d Dept. 2008). *See also Sackolwitz v. Hamburg & Co.*, 285 N.Y. 264, 268 (1946) (holding that minor who violated the penal law by obtaining employment using his brother's social security number was entitled to benefits in accordance with provisions of WCL stating: "Workmen's compensation is given without reservation and wholly regardless of any question of wrongdoing of any kind. Despite the misrepresentations, the relationship of employer and employee existed between these parties.") (internal citations and quotation marks omitted)*; Coque v. Wildflower Estates Dev. Inc.*, 58 A.D. 44, 867 N.Y.S.2d 158 (2d Dept. 2008) (submission of fraudulent social security card to obtain employment did not preclude worker from recovering damages for lost wages under scaffolding law).

Based on the foregoing, this Court opines that the New York Court of Appeals would

hold that neither fraudulent material representations by NIL nor Lopez's alleged illegal conduct, whether considered singularly or in tandem, state a claim for cancellation of the Policy given the absence of compliance with the requirements of WCL § 54(5). Accordingly, NIL's motion to dismiss that portion of the complaint seeking declaratory relief is granted.

3.    Alternatively, *Burford* Abstention is Appropriate
        Vis a Vis the Claims for Declaratory Relief

Although not raised by the parties, the Court directed them to address whether abstention pursuant to *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943) is appropriate in this case.[7] As discussed below, *Burford* abstention provides an alternative basis for dismissal of the claims for declaratory relief.

The abstention doctrine established in *Burford* is motivated by the concern of interfering in complex state administrative schemes and requires "a federal court sitting in equity [to] decline to interfere with the proceedings or orders of state administrative agencies" in certain circumstances. *Liberty Mutual Ins. Co. v. Hurlbut*, 585 F.3d 639, 649-50) (2d Cir. 2009) (internal quotation marks omitted). As the Supreme Court has explained:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of

---

[7] The Court also directed the parties to address whether abstention under *Younger v. Harris*, 401 U.S. 37 (1971) abstention is appropriate. "The existence of ongoing state proceedings is an essential requirement for *Younger* abstention . . . ." *Liberty Mutual Ins. Co. v. Hurlbut*, 585 F.3d 639, 647 (2d Cir. 2009). Here, defendants assert that there are no ongoing state proceedings and plaintiff is silent on that issue. As this Court cannot determine whether, in fact, the state proceeding are ongoing, it declines to abstain under *Younger*.

> state efforts to establish a coherent policy with respect to a matter
> of substantial public concern.

*New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 361 (1989) (quotation

marks and citation omitted).

In *Liberty Mutual*, the Second Circuit reiterated the three factors to consider in

determining whether federal review would work a disruption of a state's purpose to establish a

coherent policy: "(1) the degree of specificity of the state regulatory scheme; (2) the need to give

on or another debatable construction to a state statute; and (3) whether the subject matter of the

litigation is traditionally one of state concern." 585 F.3d at 650 (internal quotation marks

omitted). These factors warrant abstention in this case.

The Second Circuit has recognized that "[t]he WCL establishes an integrated system with

interdependent parts. It is a statute with a high level of specificity." *Id*. at 651. Further, workers'

compensation for work-related injuries is traditionally one of state concerns. Abstention is

appropriate where federal court intervention would be disruptive or might "yield inconsistent and

therefore conflicting results." *Id*.  Here, this Court's interference is inappropriate given the very

real possibility of conflicting results, as illustrated by *Rosa v. June Elect. Corp.*, – N.Y.S.3d – ,

2016 WL 3190059 (3d Dept. 2016).

In *Rosa*, a WCL claim was filed on behalf of an claimant whose sustained burns and

injury while performing electrical work and ultimately died from those injuries. The workers'

compensation carrier controverted the claim alleging that no employee relationship  existed

between the claimant and JEC, the carrier's insured, and that the coverage dispute was currently

being litigated in a federal district court.  On August 1, 2014, the Board affirmed the WCLJ's

decision rejecting the carrier's claim of no employment relationship, holding the carrier liable for the claim, and denying the carrier's application to hold the claim in abeyance pending resolution of the federal action. Seven days later a default judgment was entered in the Southern District of New York declaring that the carrier has no duty to defend or provide coverage to JEC or to provide coverage in connection with the claimant's accident. After issuance of the default judgment, the carrier sought reconsideration of the Board's August 1 decision in view of that judgment and asked the Board to rescind coverage and return the matter to the WCLJ with instructions to place the Uninsured Employers' Fund on notice. The Board issued an amended decision finding that the federal judgment has no collateral estoppel or res judicata effect on the Board and otherwise affirming its earlier decision. An appeal followed. *Id.* at * 1.

The Appellate Division affirmed. The court rejected the claims of collateral estoppel or res judicata as "neither the Board, claimant, nor the Uninsured employers' Fund - nor anyone in privity with them - was a party to the federal declaratory judgment . . . ." *Id.* at * 3.

> As the Board points out, if it had notice and an opportunity to be heard in the carrier's federal action against JEC, the Board could and would have argued, for example, that the question of workers' compensation insurance coverage of a specific claim lies squarely within the jurisdiction of the Board, and, therefore, the federal court should abstain from exercising federal jurisdiction over it. As further properly observed by the Board, the federal default judgment was entered after the Board had already determined that the workers' compensation policy, which the carrier issued to JEC, covered the claim involved in this case. It is well established that "[t]he findings by the Board . . . are final and conclusive unless reversed on direct appeal and are not subject to collateral attack in a plenary action." The Board's findings and determination in this proceeding, if disclosed to the federal court, might very well have been accorded preclusive effect by that court. As noted by the Board, if it had an opportunity to be heard in the federal action and the federal court declined to abstain from exercising federal

jurisdiction over the matter, the Board could have filed a counterclaim and a summary judgment motion to enforce the compensation award that it had already issued against the carrier. Finally, the fact that the federal action was determined upon default confirms that the issue of coverage was never "actually litigated" in that court, thereby precluding application of collateral estoppel or res judicata. In sum, given that the necessary prerequisites for applying the preclusion doctrines are absent, we find that the Board properly declined to accord preclusive effect to the subject federal declaratory judgment.

*Id*. (citations omitted).

*Rosa* is instructive in pointing out the conflicting results that may occur when a carrier seeks to perform an end-run around the carefully constructed workers compensation scheme. Here, as in *Rosa*, the carrier participated in the workers' compensation proceeding and a decision by this Court that the policy is void or that NorGuard is not responsible to pay Lopez' claim or indemnify NIL could conflict with the Boards' resolution of Lopez' claim and/or NorGuard's application pursuant to N.Y. WCL § 25(1)(f). Moreover, it could put the burden of payment on the UEF without it or the Board having an opportunity to be heard. Accordingly, abstention is appropriate and provides an alternative ground for the dismissal of NorGuard's claim for declaratory relief.[8]

**E.    The Fraud Claim**

NIL's motion to dismiss the fraud claim is premised on the proposition that the Board necessarily determined the coverage question presented by NorGuard before it could determine from whom Lopez was entitled to benefits and "if the Workers' Compensation Law requires

---

[8] The Court is not suggesting that abstention is always appropriate on the issue of the validity of a workers' compensation policy; abstention is appropriate, however, once a claim for benefits under the policy has been asserted before the Board.

NorGuard to honor its contractual obligations to pay workers' compensation benefits to Lopez and indemnify NIL, then it cannot have any damages for fraud." (NIL Mem. at 16-17.)

Turning first to the issue of collateral estoppel, that doctrine "precludes a party from relitigating in a subsequent action an issue that was clearly raised in a prior action and decided against that party." *Washington v. U.S. Tennis Ass'n Inc.*, 290 F. Supp.2d 323, 326 (E.D.N.Y. 2003) (citations and internal quotation marks omitted).  To succeed on a claim of collateral estoppel, the party asserting it must demonstrate that "(1) the identical issue was raised in a previous proceeding; (2) the issue was 'actually litigated and decided' in the previous proceeding; (3) the party had a 'full and fair opportunity' to litigate the issue; and (4) the resolution of the issue was 'necessary to support a valid and final judgment on the merits." ' *Interoceanica Corp. v. Sound Pilots, Inc*., 107 F.3d 86, 91 (2d Cir.1997). The elements have not been met in this case.

It is not clear that the issue of whether material misrepresentations were made by NIL in procuring the policy was decided in the workers' compensation proceeding or that resolution of the NorGuard's fraud claim was necessary.  For example, in stating only that he was "not agreeing with the argument by the carrier that they believe that they can retroactively void their policy and thereby make it the responsibility of the Uninsured Employer Fund" (*see* Harfenist Declar., Ex. H at p. 19-20), the ALJ seemingly assumed the presence of material misrepresentations. Also, although at the August 24 hearing the ALJ stated he was "finding the proper carrier to be NorGuard," (*id*. at Ex. H, p.20), the award required "[t]he employer or insurance" to pay the specified awards, (*Id.*, Ex. I). Finally, based on the workers' compensation record presented to this Court, it appears that the issue of NorGuard's application pursuant to

WCL § 25(1)(f) (*see* n. 3 *supra*) remains open. (Dyki Declar. Ex. 2.)

As the elements of collateral estoppel do not appear met on the current record, the motion to dismiss the fraud claim is denied.[9]

## F.   Civil Conspiracy

To state a claim for civil conspiracy, a plaintiff must "demonstrate the primary tort, plus the following four elements: (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury." *Uni–World Capital, L.P. v. Preferred Fragrance, Inc*., 43 F. Supp.3d 236, 251 (S.D.N.Y. 2014) (quoting *World Wrestling Fed'n Entm't, Inc. v. Bozell*, 142 F. Supp.2d 514, 532 (S.D.N.Y. 2001)); *accord Reich v. Lopez*, 38 F. Supp.3d 436, 461 (S.D.N.Y. 2014).

NorGuard's civil conspiracy claim is deficient as it fails to allege facts that there was a common scheme to defraud it. As noted earlier, the complaint alleges only that the false representations to secure the policy were made by NIL.  To the extent that NorGuard seeks to hold Lopez for those representations on the basis he was aware of them, there are no factual allegations that would support such liability. The claim for civil conspiracy is dismissed.[10]

---

[9] Parenthetically, the Court notes that in the area of automobile policies, New York courts have held that although a carrier is precluded from rescinding a policy retroactively due to fraud, if it is required to pay benefits under the policy to a third party, the carrier may bring an action against its insured to recover such losses. *See, e.g., Reliance Ins. Co. v. Daly*, 38 A.D. 2d 715, 329 N.Y.S.2d 504 (2d Dept. 1972); *Ins. Co. of N. Amer. v. Kaplun*, 274 A.D.2d 293, 713 N.Y.S.2d 214 (2d Dept. 2000).

[10] To the extent that NIL and Lopez may have conspired to violate various tax and immigration laws, NorGuard does not have standing to assert such claims.

## IV.  DISCUSSION - NIL's MOTION FOR SANCTIONS

NIL seeks sanctions pursuant to Federal Rule of Civil Procedure 11 ("Rule 11") arguing that NorGuard violated the rule for two reasons. "First, the law in New York is long-settled and unequivocal [that] a workers' compensation insurance policy is not subject to retroactive cancellation. . . . [Second] Norguard had a full and fair opportunity to litigate whether NIL's coverage was voided, due to NIL's alleged fraudulent misrepresentations and Lopez's criminality[,] before the Board, and lost, which precludes the issue's re-litigation in this forum." [NIL Sanctions Mem. at 6.]

Rule 11 states: "By presenting to the court a pleading, written motion, or other paper ... an attorney ... certifies that to the best of the person's knowledge, information, and belief," that a position "is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," Fed. R. Civ. P. 11(b)(1), and that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law," *id.* 11(b)(2). "In evaluating whether the signer of a filing has violated Rule 11, the district court applies an objective standard of reasonableness, examining whether, under the circumstances of a given case, the signer has conducted a 'reasonably inquiry' into the basis of a filing." *MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc*., 73 F.3d 1253, 1257-58 (2d Cir. 1996).

Sanctions are not warranted in this case.  First, although the Court rejected NorGuard's argument that it could void NIL's policy ab initio, this claim was not frivolous. Second, the Court has rejected NIL's argument that  the claims asserted by NorGuard are barred by collateral estoppel. Finally, the Court denied the motion to dismiss NorGuard's fraud claim.

The motion for sanctions is denied.

Having addressed NIL's motions, the Court now turns to NorGuard's motion for a default judgment against Lopez.

## V.  THE MOTION FOR A DEFAULT JUDGMENT AGAINST LOPEZ

### A.     Legal Standard

Motions for default judgments are governed by Rule 55 of the Federal Rules of Civil Procedure, which provides for a two-step process. *See* Fed. R. Civ. P. 55. First, the moving party must obtain a certificate of default from the Clerk of Court.  *See* Fed. R. Civ. P. 55(a). Once the certificate is issued, the moving party may apply for entry of a default judgment. *See id.* Where a default occurs, the well-pleaded factual allegations set forth in a complaint relating to liability are deemed true. *See Greyhound Exhibitgroup, Inc. v. E.L. U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). A fact is not considered "well-pleaded" for purposes of a motion for default judgment "if it is inconsistent with other allegations of the complaint or with facts of which the court can take judicial notice." *Hip Hing Produces Inc. v. Lin Zhang Trading Co, Inc.*, 2013 WL 3990761, at *3 *E.D.N.Y. Aug. 5, 2013) (internal quotation marks omitted).

When a default is entered, the plaintiff is "not entitled to a default judgment as a matter of right; rather the entry of default judgment is entrusted to the sound judicial discretion of the court." *See Enron Oil Corp v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993). The district court must determine whether the plaintiff's allegations establish liability as a matter of law. *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011). It is the plaintiff's burden to demonstrate that the uncontroverted facts establish the defendant's liability on each cause of action asserted. *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). The fact that a complaint

stands unanswered does not suffice to establish liability on its claims. *See Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 69 (2d Cir. 1971) (default-based liability is established by "well-pleaded allegations in a complaint"), *rev'd on other grounds*, 409 U.S. 363 (1973). With respect to liability, a defendant's default does no more than concede the complaint's factual allegations; it remains the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action. *See, e.g., Finkel*, 577 F.3d at 84.

**B.     The Allegations Against Lopez Do Not Establish His Liability**

NorGuard asserts the same five claims for relief against Lopez that it asserts against NIL. With respect to the three claims for declaratory relief, the allegations do not establish a claim for relief. As previously discussed, under New York Law NorGuard cannot void the workers' compensation policy ab initio. As the complaint fails to allege that the policy was cancelled in compliance with WCL §54(5) prior to the accident, NorGuard is not entitled to a judgment declaring it void or declaring that it is not obligated to pay Lopez benefits or indemnify NIL. Nor have claims for fraud or civil conspiracy been stated against Lopez as there is no factual information alleged in the complaint that would make plausible a claim that he participated in the alleged material misrepresentations made to NorGuard or that there was a common scheme to defraud plaintiff.  Assuming that Lopez violated the various immigration and tax laws as alleged, plaintiff simply does not "fall within the zone of interests protected by law invoked." *Lexmark Int'l. Inc. v. Static Control Components. Inc*., 134 S. Ct. 1377, 1388 (2014) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)).  Such violations are the concern of the Internal Revenue Service, Homeland Security, and like agencies.

The motion for a default judgment against Lopez is denied and the claims against him are dismissed.[11]

## CONCLUSION

NIL's motion to dismiss is granted on the claims for declaratory relief and civil conspiracy and denied on the claim for fraud. NIL's motion for sanctions is denied. NorGuard's motion for a default judgment against Lopez is denied and the claims against him are dismissed.

Dated: Central Islip, New York
   January 24, 2017         _/s  Denis R. Hurley_
                   Denis R. Hurley
                   United States District Judge

---

[11] Having dismissed the claims against him, it is unnecessary to address Lopez's motion to vacate his default.